BAKER-McGREW COMPANY *v.* UNION SEED & FERTILIZER COMPANY.

Opinion delivered July 3, 1916.

ESTOPPEL—CONDUCT—LIABILITY FOR DEBT.—B and M conducted a partnership business, and later attempted to turn over certain of its assets to another partnership composed of themselves and others. The two concerns did business with appellee, who believed them to be identical. *Held,* the latter organization was estopped by its conduct from denying liability for a debt due to appellee from B and M.

Appeal from Clay Chancery Court, Western District; *C. D. Frierson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Baker & McGrew, a partnership, composed of R. L. Baker and W. R. McGrew, was engaged in a general mercantile business and operated a cotton gin at Success, in Clay County, until February 1, 1912. On that date, a stock company composed of R. L. Baker and W. R. McGrew, and seven others, was organized, with a capital stock of $20,000, $13,500 of which was paid in. It was called Baker-McGrew Company and took over the mercantile business, but not the cotton gin formerly owned and operated by Baker and McGrew. On March 25, 1913, Baker and McGrew borrowed $4,000 from the oil company and executed a note therefor and a contract to sell their cotton seed to the oil company and secured the note by a second mortgage on their gin plant. Baker and McGrew operated their gin during the season of 1913 and 1914 and shipped seed to the oil company and reduced their indebtedness to about $1,000.

The appellee company, hereafter called the Seed Company, took over the business and the assets of the oil company, including the Baker and McGrew mortgage.

The Baker-McGrew Company continued its credit mercantile business during the year 1914 and Baker and McGrew not being financially able to operate their gin and purchase cotton, the Baker-McGrew Company in order to facilitate making its collections bought cotton and had it ginned by Baker and McGrew at $3.50 per bale and

shipped a part of its cotton seed to the seed company. Part of the proceeds of the price of these seed shipments was applied by the seed company to the payment of the old account of Baker and McGrew and the right to make such application thereof is the matter involved in this suit and appeal.

The foregoing facts were alleged in the complaint and also that the Baker-McGrew Company and Baker and McGrew are in law one and the same person so far as the transactions involved are concerned, and that the seed company was entitled to credit the sums of money retained from the purchase price of the cotton seed on the old debt of Baker and McGrew. That although Baker-McGrew Company pretended to be an organization or stock company of some kind, that it was in fact a partnership virtually owned and controlled by R. L. Baker and W. R. McGrew and that the shipments of seed made to the seed company were in fact made by Baker and McGrew or on account of said partnership.

Judgment was prayed against Baker and McGrew for a balance of $264.17 claimed to be due and a foreclosure of the mortgage.

The defendants R. L. Baker and W. R. McGrew, admitted the execution of the note and that there was a balance due on it but denied that their firm Baker and McGrew had shipped any cotton seed to the seed company during the season of 1914 and 1915, or drawn any drafts on said company and any understanding by which any seed shipped during said season should be applied to the payment of their note. They denied the other allegations of the complaint above set out and that plaintiff was entitled to any credit upon their debt by reason of cotton seed shipped by Baker-McGrew Company.

Baker-McGrew Company filed an answer and cross-complaint, alleging that it was an association with R. L. Baker and W. R. McGrew as secretary and treasurer; the amount of its capital stock and names of the other seven stockholders; that Baker and McGrew was a partnership composed of R. L. Baker and W. R. McGrew; that the two concerns were entirely separate and distinct,

conducting different kinds of business under different managements and with assets separate and distinct and in no way connected. Denied that Baker and McGrew had shipped any cotton seed to the seed company for said season and that it was in any way liable for the debts of Baker and McGrew and also the right of plaintiff to apply any proceeds of its cotton seed shipped to them to the discharge of the debt owing it by Baker and McGrew. By way of cross-complaint alleged it had shipped seed during October and November, 1914, to the plaintiff for which it was indebted for a balance of $960.81, with interest and prayed judgment therefor.

The testimony which consisted largely of correspondence was introduced and it appears that the two companies or partnerships are in fact separate concerns, conducting different businesses and that the cotton seed shipped to the seed company in October and November, 1914, was the property of Baker-McGrew Company, which conern, it was not contended, expressly authorized the seed company to apply any part of the proceeds thereof to the payment of the account of Baker and McGrew, or that it was known to said company that it was being so applied until the letter of October 29th. Appellant says there was no contention below that Baker-McGrew Company intended to mislead the seed company and that it may be conceded here that from the time shipments of seed began until the receipt of the letter of November 18, the seed company honestly believed that Baker and McGrew and Baker-McGrew Company were one and the same and said Baker-McGrew Company believed it was selling cotton seed to the seed company for the market price and of course entitled to all of the proceeds of the sale. Other facts will be stated in the opinion.

Judgment was rendered in favor of the seed company, from which this appeal is prosecuted.

*G. B. Oliver*, for appellant.

Appellee has utterly failed to make out a case of equitable estoppel; it has wholly failed by a preponderance of the evidence to establish any one of the five essen-

tials of an equitable estoppel. No one represented that the partnership and the company were one and the same concern. Appellee knew better. There was neither misrepresentation, deceit nor fraud, nor any concealment of facts. It knew the facts or had the means of knowledge of the real facts. 16 Cyc. 722 (A); *Ib.* 726; Pom. Eq. Jur., § 805; 97 Ark. 43-49; 16 Cyc. 748-k. The burden was on appellee and it has wholly failed. The decree should be reversed and judgment rendered here for $1,009.84, with interest for appellant.

*Cockrill & Armistead*, for appellee.

Even looking upon Baker & McGrew and Baker-McGrew Co. as entirely distinct and separate concerns, the company so held itself out and dealt with appellee as to estop it from afterwards claiming that the seed company had no right to credit the $1,000 on the partnership account. But independent of estoppel the company is responsible for the company's acts. There is no proof of incorporation. Articles of agreement were entered, but not filed. The scheme known as the Massachusetts Trust was followed, which will not work as a corporation in Arkansas. It was not a corporation nor statutory joint stock company. 220 U. S. 178. It was simply a partnership. Cook on Corp., § 508; 17 A. & E. Enc. Law, 636; 30 Cyc. 397-8; 72 S. W. 875; 62 Ark. 229, 234; 35 *Id.* 144; 35 *Id.* 366; 19 A. & E. Enc. 337, etc.

2. A clear case of equitable estoppel is made. 16 Cyc. 723, 728, 730, 772; 97 Ark. 49; 89 *Id.* 349-352; 11 *Id.* 249; 33 *Id.* 465; 96 *Id.* 350; 85 *Id.* 144, 156; 29 *Id.* 512; 80 *Id.* 23; 93 *Id.* 301; 83 *Id.* 548; 55 *Id.* 296; 39 *Id.* 134.

3. Injury was shown. 62 Ark. 316; 101 *Id.* 135; 36 *Id.* 96-114; 82 *Id.* 367; 16 Cyc. 742; 81 Cal. 584; 3 Hun. 744; 132 La. 60; 120 S. W. 407; 24 Ark. 371; 38 *Id.* 571; 48 *Id.* 409; 64 *Id.* 213; 74 *Id.* 136.

KIRBY, J. (after stating the facts). It is contended by appellant that there is no showing of any ground of estoppel of it to recover the proceeds of the seed shipped by it to appellee company, nor authorizing the appropria-

tion of the price thereof by said seed company to the payment of its debt against Baker and McGrew, but the majority do not agree with this contention.

It is true that the seed company did not pay any more than the market price for the cotton seed purchased, but it claims that because of the dullness and inactivity in the market of its products that it would not have purchased the seed at. all from Baker-McGrew Company, had it known that a portion of the proceeds thereof could not be applied upon their debt against Baker and McGrew. In other words, commercial conditions were such and their supply of manufactured products, that they would not have purchased seed at the market price except from their customers, who were indebted for advances and in order to facilitate the collection of such debts.

Cyc. defines an equitable estoppel as follows: "The effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract or of remedy as against another person who in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy." 16 Cyc. 722-A.

An estoppel *in pais* may arise from a transaction in which a party has led another into the belief of a particular state of facts by conduct of culpable negligence, which has been the proximate cause of leading, and has led such other party to act by mistake upon such belief to his prejudice, and gross negligence has been held evidence of an intent to deceive. 16 Cyc. 772; *Arkansas National Bank* v. *Boles*, 97 Ark. 43.

In *Jett* v. *Crittenden*, 89 Ark. 349, the court said: "The rule broadly stated is that a person who intentionally by culpable negligence induces another to act on his representations will be estopped from denying their truth." See also 16 Cyc. 732.

In *Jowers* v. *Phelps*, 33 Ark. 465, the court said (quoting syllabus): "A party who by his acts, declara-

tions, or admissions, or by failing to act or speak when he should, either designedly or with wilful disregard of the interest of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, is estopped to assert his right afterward, to the injury of the party so misled." See also *Fagan* v. *Stuttgart Normal Institute*, 91 Ark. 148; *Graff* v. *Lena Lumber Co.*, 96 Ark. 350; *Graham* v. *Thompson*, 55 Ark. 296; *Bramble* v. *Kingsbury*, 39 Ark. 134.

On January 3, 1914, Baker and McGrew wrote the seed company, enclosing the bill of lading for a car of seed, stating it was their last, and "In regard to our account will say, that the unusual short crop has left us a little close and we would like to make arrangements about the same as last year and take up the old matter." On the 17th of July, following, the firm wrote another letter to the seed company asking for an additional loan of $1,000 and on the 23rd the seed company's manager went to Success to see R. L. Baker. He said they discussed the method of seed shipping and the probability of his continuing shipments on about the same plan as formerly and Baker said he would do so. This agent learned nothing of the concern called Baker-McGrew Company at the time and upon his return to St. Louis procured a report from the Bradstreet agency, which showed the Baker-McGrew Co. was some sort of a Massachusetts Trust concern "not a corporation," "succeeding Baker & McGrew" and reciting that the present company was formed to take over the business. After this report was received, the manager of the seed company concluded that the new company was successor to the old, or the same as Baker and McGrew.

All the transactions thereafter were carried on by correspondence and nearly all the letters written by the seed company were addressed to Baker & McGrew, and Baker-McGrew Co. answered most of these letters. The correspondence consisted of quotations of prices for cotton seed by the seed company, and notification of shipments in response thereto. The seed was ginned

from the cotton purchased by Baker-McGrew Co. at Baker & McGrew's gin for an agreed price.

In July Baker & McGrew requested the loan of a thousand dollars, giving a statement of the seed shipped for the three former seasons, and that it expected to gin a certain amount of cotton for the 1914 and 1915 season and its manager permitted the loan, saying he had visited Success and found everything in a prosperous condition. The manager took it up with his division manager and discussed the chances of clearing up the old indebtedness and the new loan if made. On the 30th the old company wrote on Baker-McGrew Co.'s letter heads, again requesting an additional loan of $1,000, promising "to clean up our account with you this fall." The seed company answered this letter directing it to Baker & McGrew and saying they hoped to make the loan but expected the old balance to be covered by the seed shipment in any event.

Appellee then declined to make the loan and so notified Baker & McGrew on August 6th. It then on September 15, wrote to them quoting the price per ton for seed and on September 28th Baker-McGrew Co. wrote the seed company requesting quotations on seed. On September 29th the division manager of appellee wrote the manager instructing him to watch the indebtedness of the Baker and McGrew account. On the 29th the seed company acknowledged the receipt of Baker-McGrew Company's letter of the 28th, stating there had been no change in the market since "our letter of the 25th inst., naming you the price of $16.00 per ton."

The first bill of lading for seed shipped was enclosed in a letter signed Baker-McGrew Co., the bill showing the shipper to be Baker and McGrew.

This was acknowledged on October 2, in a letter addressed to Baker and McGrew and thanking them for the shipment and asking for another car. On the same day the manager of appellee wrote the division manager that Mr. McGrew had shipped one car of seed to apply on account. The correspondence from there on was by Baker-McGrew Co. notifying of the shipment of seed and

drafts drawn for a certain amount of the price thereof. These letters were signed usually Baker-McGrew Co., by R. L. Baker, President, or by the secretary.

It was also shown that the secretary of the Baker-McGrew Co. usually answered the correspondence of Baker and McGrew at the direction of R. L. Baker of that firm, stamping the signature to the letters.

Appellant company drew drafts usually for less than the amount due for a car of seed shipped, the weight of which, however, was estimated as there was no track scale at their place.

This practice was continued into November, the Baker-McGrew Co. drawing for an amount in excess of the price of the car shipped only two or three times, which was consented to in advance by appellee. On Nov. 10, 1914, said company forwarded the bill of lading with notice to the seed company, that it had drawn for $900, the proceeds of the car only being about $430; to this appellee company replied they had directed the bank to hold the draft until they could hear from appellant and enclosed statement of the account asking that it be so handled that the balance would be wiped out by the end of the season.

This account showed credits for all the seed shipped with a charge against the Baker-McGrew Co. of the old balance of $1,200 on account of Baker & McGrew. On the 18th the seed company again wrote declining to accept the draft for $900 without at least three more bills of lading to apply against it. They advised of a payment of a draft for $350 without notice from the shipper, stating it would be charged against the first car shipped open. On the 18th, Baker and McGrew wrote appellee saying: "In regard to the statement you sent to Baker-McGrew Co. will say that their secretary called our attention to it, that the company's account is different from ours," also stated that times had been bad during the season and they would not be able to pay more than "the interest on our indebtedness this year to you."

On the same day, appellant company acknowledged receipt of the statement and approved it, "except the

balance on the note and interest $1,207.74, which is not our account but Baker and McGrew's account." Also advised of a draft for $350 drawn and hoped to continue furnishing seed during the remainder of the season.

On the 19th, they wrote again regarding appellee's action in returning the draft and reiterating the statement that the old indebtedness was Baker and McGrew's and not the Baker-McGrew Co.'s. Also stated the Baker-Grew Co. was formed about two years ago and bought no cotton until this year and it was necessary to do so in order to collect accounts. Made another draft for $900 with the statement of the indebtedness and that two other bills of lading had been forwarded. Appellee company on the 20th answered expressing surprise at the claim, that the said appellee had nothing to do "with the balance due us from Baker & McGrew;" stated its understanding was that both concerns were the same and that any seed shipped during the season with the balance left in its hands would apply on the indebtedness carried over from last year, refused to pay the $900 draft and stated that any amounts due beyond the drafts paid must be applied to the credit of the old account, and "any balance due you from shipments this season is a matter you will have to adjust with Baker & McGrew and not with us."

On the 26th of February, 1915, Baker & McGrew wrote appellee company, stating the cotton season was over, that they were still behind in the payment of their account and asking a loan of $1,000 about April 1st, to be repaid in the fall. The company answered this letter, stating its record showed an indebtedness of $271.45, including interest on past due account and stating if it was paid promptly that the loan would be made.

The testimony is unquestionably sufficient to show that appellee company understood throughout the whole transaction until the letter of Nov. 10, when the season was practically over, that it was dealing with the successor of Baker and McGrew, which it understood was responsible for the indebtedness of the old firm.

The correspondence between the two concerns was calculated to confirm this belief and appellee's testimony

is undisputed that it would not have purchased the seed from appellant company at all, had it not expected that part of the proceeds thereof was to be applied to payment of the old account. This in the opinion of the majority is sufficient to create an estoppel against the appellant company, precluding it from claiming the balance due for the seed shipped, that was in fact applied upon the old account of Baker & McGrew. 16 Cyc. 742; *Rhodes* v. *Cissel*, 82 Ark. 367.

·The Baker-McGrew Company was not incorporated; was organized under a scheme known as the Massachusetts Trust and was in effect no more than a partnership. Certainly it was not a corporation or joint stock company. *Forbes* v. *Whittemore*, 62 Ark. 229; *Garnett* v. *Richardson*, 35 Ark. 144; *Elliott* v. *Freeman*, 220 U. S. 178; 17 A. & E. Enc. of Law 636; Cook on Corporations Sec. 508; 30 Cyc. 397.

While it is true one member of a partnership has no authority to pay an individual debt with the partnership funds ·or assets without its consent, no such payment was attempted to be made here, nor was any made unless by estoppel of appellant company by its conduct and dealings with appellee. There could be no ratification of the act if it were claimed that such payment was attempted to be made since there was no notice or knowledge ·of the other partners of the transaction shown by the testimony. Those in charge of appellant company represented all the individual members in their conduct of its affairs and sales of seed to the appellee and the members are accordingly bound by the estoppel arising from their conduct.

No prejudicial error is found in the record, and the judgment is affirmed.