CALLAHAN *v.* FARM EQUIPMENT, INC.

5-767                                              283 S. W. 2d 692

Opinion delivered November 14, 1955.

548

*Frierson, Cherry, Walker & Snellgrove,* for appellant.

*Ponder & Lingo,* for appellee.

MINOR W. MILLWEE, Associate Justice.   Appellant, Melvin Callahan, was the owner and operator of Callahan Tractor Company in Lawrence County, Arkansas, in November, 1950, when that company became a retail dealer for the sale of farm machinery manufactured by Harry Ferguson, Inc., hereinafter called Ferguson.   The

dealership was established under a plan customarily employed by Ferguson which enabled the retailer to "floor plan" his merchandise and to immediately receive the price of equipment sold by transferring the conditional sales contracts either to Ferguson or its assignees. Under this arrangement, Ferguson and the appellant, as "Owner" of the Callahan Tractor Company, executed a "Dealer Underlying Agreement" on November 20, 1950. In this agreement the Callahan Tractor Company in effect guaranteed the payment of all notes and conditional sales contracts which it transferred to Ferguson, or its assignees, although the assignment of such instruments was under a non-recourse endorsement. The agreement was by its terms effective until terminated by either party by 60 days written notice. Appellant also furnished a financial statement to Ferguson prior to issuance of the retail franchise.

On the dates of September 17, 1951, and October 18, 1951, respectively, the Callahan Tractor Company sold certain farm machinery to Bill Kissee and Lester Bilbrey under conditional sales contracts signed by each purchaser and by Harold Callahan, appellant's brother, for Callahan Tractor Company without any indication as to official title or the capacity in which he acted for the company. Each sales contract, upon issuance, was immediately assigned by Callahan Tractor Company to Ferguson and the assignment was likewise executed by Harold Callahan. Subsequently Ferguson assigned said sales contracts and the "Dealer Underlying Agreement" to Universal C. I. T. Credit Corporation which in turn assigned said instruments to appellee, Farm Equipment, Inc., on December 30, 1953. Appellee is engaged in handling negotiable paper issued in the sale of farm equipment, with its principal office at Memphis, Tenn. Its officers are also the officers of Southland Tractors, Inc., hereinafter called Southland, which was the general agent and distributor for Ferguson in negotiating the dealership with Callahan Tractor Company.

Both Kissee and Bilbrey defaulted in the payments due under the conditional sales contracts. On May 29,

1954, appellee brought this action against Melvin Callahan and Harold Callahan for the balance of $2,710.17 due on the two contracts under the terms of the "Dealer Underlying Agreement" executed on November 20, 1950. The complaint alleged the two brothers were doing business as a partnership under the name of Callahan Tractor Company at the time of the execution of the conditional sales contracts and the underlying agreement sued upon. Each defendant filed separate amended answers. Appellant defended on the grounds that he was not a proper party, alleging he was sole owner of the business until about June 25, 1951, when he sold to his brother and that such facts were known to Ferguson and its assignees; and that the business was never operated as a partnership. Similar allegations were made by Harold Callahan who admitted execution of the sales contracts and the assignments to Ferguson but denied any indebtedness to appellee.

At the conclusion of the testimony offered by appellee, the court indicated that a motion for a directed verdict would be granted as to the defendant, Harold Callahan. Counsel for appellee stated that the action was against the defendants both individually and as a partnership; that the pleadings should be amended to conform to the proof and the cause allowed to proceed against appellant individually and as owner of the Callahan Tractor Company. At the conclusion of appellant's evidence, the court instructed the jury that appellee had been permitted to take a voluntary nonsuit as to Harold Callahan. In requesting an instructed verdict against appellant, counsel for appellee insisted that under the undisputed proof appellant was either still the actual owner of the Callahan Tractor Company or had so conducted himself that he was estopped to deny such ownership and his liability for the debts sued upon. Appellant also requested an instructed verdict on the ground that the undisputed proof showed his brother owned the company when the two contracts were negotiated. Both requests were denied and the cause was submitted to the jury which returned a verdict against appellant for the balance due under the two conditional sales contracts.

Able counsel for appellant, who were employed after the trial, first contend the trial court erred in refusing to direct a verdict for appellant. It is argued that the undisputed evidence showed appellant was not the owner of the business when the two contracts in question were negotiated, and that appellee and its assignors all knew of, and acquiesced in, such transfer. While we are of the opinion that a jury question was made as to whether appellant was still the owner of the business when the sales contracts were executed, this question was not submitted to the jury nor was it the basis for the jury's verdict against appellant. Since neither party requested an instruction on this particular issue, neither is in position to complain now of the trial court's failure to present it to the jury. *Jones* v. *Seymour*, 95 Ark. 593, 130 S. W. 560.

Appellant next argues that a verdict should have been directed in his favor because the evidence was insufficient to warrant the submission of the issue of estoppel to the jury. While this point was not urged at the trial, we hold that a jury question was also made on the issue of estoppel upon which the verdict rests. Appellant was in ill health in June, 1951, when Harold took over the operation and management of the business. According to the two brothers the business was then sold to Harold but there is no proof as to the terms or conditions of such a sale. There were other circumstances which tend to refute the sale theory. After Harold took charge of the business, he made periodic financial statements of the Callahan Tractor Company to Southland as required by Ferguson. In none of these did he sign as owner of the business and all were made by him in the name of Callahan Tractor Company as were the two conditional sales contracts sued upon. In each of these several financial statements the individual lands of appellant, valued at $28,000.00, were listed as assets of the Callahan Tractor Company just as in the original statement submitted by appellant in November, 1950. These lands constituted more than 50% of the total listed assets of the business at any time.

Although appellant testified that Southland knew he reserved no interest in the business after June 25, 1951, he admitted he knew that his lands were still being listed as assets of the Callahan Tractor Company by his brother. He understood this was done "to aid in the financing and floor planning of new equipment" and also stated that Southland knew it was being done for that purpose. Harold gave similar testimony and, in addition, stated that the false statement as to ownership of the lands was made to both Southland and Universal C. I. T., "to satisfy the higher ups" in these corporations. T. D. Warner, who was secretary-treasurer of both the appellee and Southland, testified that Ferguson relied on the financial statements in handling the instruments sued upon and other paper of Callahan Tractor Company. Appellant admitted his signature to an underlying agreement with Universal C. I. T. dated December 31, 1951, as "owner" of the Callahan Tractor Company. There was no showing that Harold Callahan ever executed a dealer underlying agreement and the one signed by appellant on November 20, 1950, was terminated by written notice of Southland received by appellant and his brother on April 11, 1953.

Under the foregoing evidence, appellant insists that it is undisputed that appellee and its assignors were not only aware of the falsity of the representations in the financial statements but that some of the officers in these corporations actually induced such misrepresentations for the purpose of increasing their business and misleading some of the other officers of such corporations. Since appellant and his brother were interested parties to the litigation, it cannot be said that their testimony to this effect is undisputed. Besides, the testimony of Warner and other circumstances in the case tend to contradict the strange theory advanced to the effect that some of the officers of the various agencies conspired with appellant and his brother in order to mislead certain other officers and thereby defraud said companies. On the whole case, we hold it was for the jury to determine, from the conflicting testimony, whether credit was ex-

tended to the Callahan Tractor Company by appellee and its assignors due to the admittedly false representations in said financial statements. The jury resolved this issue in appellee's favor upon evidence that is substantial and sufficient to support the verdict.

It is next contended that the trial court erred in permitting the issue of estoppel to be raised by oral amendment of the pleadings either at the conclusion of the evidence on behalf of appellee or that introduced by appellant. Appellant says the court's action in permitting the pleadings to be amended to conform to the proof on the issue of estoppel amounted to the allowance of an amendment which introduced a new cause of action after commencement of the trial in violation of Ark. Stats., § 27-1160. Appellant relies on the general rule to the effect that estoppel must be pleaded to be available as a defense. However, we have held that it is within the sound discretion of the trial court to treat the pleadings as amended to conform to the proof on the issue of estoppel where no objection was made to such proof on the ground that it was not responsive to the pleadings. *Brotherhood of Railroad Trainmen* v. *Long,* 186 Ark. 320, 53 S. W. 2d 433; *Williams* v. *Davis,* 211 Ark. 725, 202 S. W. 2d 205. The financial statements of Callahan Tractor Company, upon which the issue of estoppel was primarily based here, were introduced without objection. Other evidence relating to the issue was also admitted without any objection on the ground that estoppel had not been pleaded, and there was no plea of surprise. Under these circumstances, the trial judge did not abuse his discretion in treating the pleadings as amended to conform to the proof.

Appellant says the trial court erred in permitting the witness Warner to testify as follows: "Q. Do you know whether in handling paper from Callahan Tractor Company, and in particular the two contracts here of Bilbrey and Kissee, Harry Ferguson relied on the financial statements and on the financial worth of Melvin Callahan: A. Yes, sir; they did." The objection at the trial was that proper foundation had not been laid for

the question, but it is now argued that the question was leading. Warner was an officer of both appellees and Southland and testified that he was "the internal operations man" of the corporations. Since there was nothing in the question to suggest the answer, which might have been yes or no, it can hardly be classed as leading. *Jim Fork Coal Company* v. *Rhotenberry,* 183 Ark. 319, 35 S. W. 2d 590. It is true that the probable effectiveness of the positive answer of the witness was somewhat weakened by further questioning which tended to show that it was based more upon general business practices than actual personal knowledge of particular transactions. But this did not render the previous testimony incompetent in the absence of a renewal of the objection.

It is next argued the court erred in giving Instruction No. 3 which reads: "You are also instructed that if you find by a preponderance of the evidence that credit was extended to the Callahan Tractor Company due to representations made by Melvin Callahan, or his agents, if any, or by any other person with his knowledge and consent, then your verdict should be for the plaintiff. Unless you so find, your verdict should be for the defendant, Melvin Callahan."

All the instructions were given by the court on his own motion and there was only a general objection to Instruction No. 3. The jury were given the usual admonition to consider the instructions together and there was no objection to any other instruction by either party. If appellant felt at the trial, as he now contends, that the instruction was abstract and the issue of estoppel was inadequately defined therein and that the instruction was too general in not confining the "credit" extended to that involved in the suit, his duty to the trial court was to point out such alleged defects by specific objection or offer instructions that more clearly defined these issues. *American Realty Company* v. *Hisey,* 113 Ark. 78, 167 S. W. 488; *Bennett* v. *Snyder,* 147 Ark. 206, 227 S. W. 402. A party is in no position to complain because instructions given by the court are too general where he fails

to request correct instructions on the subject. *Queen of Arkansas Ins. Co.* v. *Malone,* 111 Ark. 229, 163 S. W. 771.

The only question now is whether the instruction is inherently erroneous. When considered with the other instructions, we hold that Instruction No. 3 embodied the principle announced in such cases as *Graham* v. *Thompson,* 55 Ark. 296, 18 S. W. 58, and *Jett* v. *O. B. Crittenden & Co.,* 89 Ark. 349, 116 S. W. 665. In the last case cited, the court said : "The rule broadly stated is that a person, who intentionally or by culpable negligence induces another to act on his representations will be estopped from denying their truth." In the *Graham* case it was held (Headnote 1): "One who induces another to credit a third person by representing him to be the owner of certain property will be estopped, as to the creditor, to deny such ownership." From the appellant's own viewpoint, it is undisputed that the representations here were known by him to be false and for the purpose of obtaining credit by misleading someone. It was for the jury to determine whether this was done by appellant and his brother in collusion with certain officers of the lending agencies as they contend, or without such collusion as appellee maintains. In these circumstances, we cannot say the instruction is inherently erroneous.

It is finally argued that error was committed in permitting appellee to introduce a second underlying agreement executed by appellant to Universal C. I. T. on December 31, 1951, in which he signed as "owner" of the Callahan Tractor Company. It was, of course, appellant's theory throughout the trial that he had no proprietary interest in the Callahan Tractor Company after June 25, 1951. On the other hand, it was appellee's theory that appellant never disposed of his interest in the business. After appellant had fully testified in support of his theory, he was presented with the second agreement and admitted his signature thereto. It was then offered in evidence to impeach his previous testi-

mony. The instrument was clearly admissible for this purpose under Ark. Stats., §§ 28-707 and 28-708.

We find no prejudicial error, and the judgment is affirmed.