## James A. NASH  v.  LANDMARK STORAGE, LLC

CA 07-1138                                              283 S.W.3d 605

Court of Appeals of Arkansas
Opinion delivered April 23, 2008

*Ed Daniel*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *J. Carter Fairley* and *Rick Behring, Jr.*, for appellee.

KAREN R. BAKER, Judge. James Nash has appealed from an order awarding summary judgment to Landmark Storage, LLC, in Nash's negligence lawsuit. We affirm.

In the fall of 2005, Nash rented a storage unit from Landmark. In December of that year, he discovered that the unit had been burglarized and some items had been stolen. Nash sued Landmark for negligence in failing to maintain a secure facility. He also alleged that Landmark was negligent in posting a sign on its gate that said "Premises Monitored by Video Surveillance" when there was no such surveillance.

Landmark moved for summary judgment, attaching copies of Nash's deposition and the rental agreement, which contained the following exculpatory provision:

Tenant accepts the premises as suitable for the purpose for which they are rented and waives all defects, if any, therein. Landlord shall

not be responsible to Tenant, his invitees, agents or employees for damage to person or property caused by negligence, water, fire, theft, windstorm, flood, vandalism, defects in the premises or same being or becoming out of repair, or for any casualty or other cause whatever and Tenant agrees to indemnify and to hold Landlord harmless of and from any such damage, loss, cost or expense. Tenant assumes responsibility of fire and extended insurance coverage on property placed in the storage space hereby rented. ALL PROPERTY KEPT, STORED OR MAINTAINED ON THE PREMISES BY TENANT SHALL BE AT TENANT'S SOLE RISK.

Landmark also attached to its motion the affidavit of Landmark's owner, who stated that the sign was posted on the front gate for the sole purpose of deterring theft. Landmark noted that, in Nash's deposition, he acknowledged that, according to the agreement, he assumed the risk of theft. It also argued that, under Arkansas law, a landlord does not owe a duty to protect a tenant from the criminal acts of a third party and that it had not assumed such a duty. In response, Nash asserted that, before he rented the facility, he had relied upon Landmark's sign representing that there would be monitored video surveillance and that he had mentioned the sign to Landmark's agent, who was silent. He argued that the agent's silence, coupled with the sign's false advertising, required the application of the doctrine of estoppel in pais to prevent Landmark from denying that it had assumed a legal duty.

In his deposition, Nash testified about his entering into this agreement as follows:

A. The first time I rented the storage unit, there, and that's what gave me the security in order to rent another one there again.

Q. Great. And when you first saw that in August '04 when you rented the first unit there, did you ask anybody about that?

A. No, I did not.

Q. Why not?

A. I don't recall. I don't remember. I had asked somebody about if there had ever been any problems there, and they said, no, we have never had any problems, but I didn't ask about the video surveillance.

Q. What about the second time when you rented the storage facility, did you ask anybody about the video surveillance?

A. No.

Q. Why not?

A. I just didn't, because — I just didn't because I seen the sign and I trusted that, you know, it was video monitored, and I didn't have any trouble there before so I felt that my things were going to be safe in that unit.

. . . .

Q. When you signed the contract with Landmark Storage either in August '04 or May '05, did you tell the person that you were signing the contract with that you were relying on that sign out there on the gate to provide video surveillance on the condition of you signing this document?

A. I recall mentioning something about it.

Q. What did you say?

A. I don't remember. I recall mentioning something about it. The first time there was a girl there, the second time there was a guy there that I, you know, rented it from, so I don't remember any kind of conversation.

Q. And you don't recall what it was you said at all?

A. No, except maybe I noticed, you know, on the sign that, you know, you had video surveillance, and, you know, I hope everything is going to be okay.

Q. And what did they say?

A. They said, we've never had any problem.

Q. They didn't tell you that there was in fact video surveillance?

A. No.

Q. And they didn't tell you that there wasn't?

A. They — no.

At the conclusion of the hearing on the motion, the circuit court stated that the posting of the sign was not enough to impose a duty upon Landmark to conduct video surveillance. It entered summary judgment for Landmark, from which Nash pursued this appeal.

Summary judgment is a remedy that should be granted only when there are no genuine issues of fact to litigate and when the case can be decided as a matter of law. *Denton v. Pennington*, 82 Ark. App. 179, 119 S.W.3d 519 (2003). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. In other words, when the facts are not at issue but possible inferences therefrom are, we will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Thomas v. Stewart*, 347 Ark. 33, 60 S.W.3d 415 (2001).

Nash argues that issues of material fact regarding Landmark's negligence remain. He asserts that he rented the storage unit with Landmark, without investigating other options, in reliance on the sign's message and the agent's failure to correct his belief that video surveillance was provided. Thus, he argues, the doctrine of estoppel in pais should be applied to prevent Landmark from asserting that it owed him no duty.

The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached. *Lacy v. Flake & Kelley Mgmt., Inc.*, 366 Ark. 365, 235 S.W.3d 894 (2006). The issue of whether a duty exists is always a question of law, not to be decided by a trier of fact. *Id*. If no duty of care is owed, summary judgment is appropriate. *Id*. Arkansas follows the well-settled rule that a landlord does not owe a duty to protect a tenant from criminal acts. *Id*. Only an express agreement or assumption of duty by conduct can remove a landlord from the

general rule of non-liability. *Id.; accord Hall v. Rental Mgmt., Inc.,* 323 Ark. 143, 913 S.W.2d 293 (1996); *Bartley v. Sweetser,* 319 Ark. 117, 890 S.W.2d 250 (1994).

The controlling question, therefore, is whether Landmark removed itself from the general rule by assuming a duty to protect Nash's property from the criminal acts of a third party. Clearly, the lease did not give rise to a duty; in fact, it expressly disclaimed such a responsibility. The next question is whether Landmark's posting of this sign and its agent's silence about the posting amounted to an assumption of duty by conduct. *See Lacy v. Flake & Kelley Mgmt., Inc., supra.* According to Nash, the doctrine of equitable estoppel requires us to hold that they did.

An "estoppel in pais" may arise from a transaction in which a party has led another into the belief of a particular state of facts by conduct of culpable negligence which has been the proximate cause of leading and has led such other party to act by mistake on such belief to his prejudice. *Baker-McGrew Co. v. Union Seed & Fertilizer Co.,* 125 Ark. 146, 188 S.W. 571 (1916). Our court recently discussed the application of this doctrine:

> Estoppel in pais is the doctrine by which a person may be precluded by his acts or conduct, or by failure to act or speak under circumstances where he should do so, from asserting a right which he otherwise would have had. The elements of equitable estoppel are these: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his detriment. *King v. Powell,* 85 Ark. App. 212, 148 S.W.3d 792 (2004). A party who by his acts, declarations, or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *Id.* However, there is no estoppel in the absence of a change of position in reasonable reliance. *Bharodia v. Pledger,* 340 Ark. 547, 11 S.W.3d 540 (2000). Whether there has been actual reliance and whether it was reasonable are usually questions for the trier of fact. *Kearney v. Shelter Ins. Co.,* 71 Ark. App. 302, 29 S.W.3d 747 (2000).

*Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, 270 S.W.3d 369 (2007).

Though the doctrine had its beginnings in equity, we have long held that estoppel in pais may be set up in actions at law as well as in suits in equity. *Lavaca Sch. Dist. No. 3 v. Charleston Sch. Dist. No. 9*, 304 Ark. 104, 800 S.W.2d 703 (1990); *Moorehead v. Universal C.I.T. Credit Corp.*, 230 Ark. 896, 327 S.W.2d 385 (1959). A person who intentionally or by culpable negligence induces another to act on his representations will be estopped from denying their truth. *Callahan v. Farm Equip., Inc.*, 225 Ark. 547, 283 S.W.2d 692 (1955).

We need not decide whether, under the undisputed facts of this case, the doctrine of equitable estoppel could be applied to prevent Landmark from denying that it assumed a duty to Nash. Even if such a duty had been created by Landmark's conduct, the parties' contract unambiguously excluded any liability on the part of Landmark for any type of property loss, regardless of its cause.[1] A contract's language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Lynn v. Wal-Mart Stores, Inc.*, 102 Ark. App. 65, 280 S.W.3d 574 (2008). This contract met neither requirement. Because this agreement's exculpatory clause was unambiguous, its construction was a question of law for the court, and no question of fact was presented. *Vogelgesang v. U.S. Bank, N.A.*, 92 Ark. App. 116, 211 S.W.3d 575 (2005). Nash further argues that he was fraudulently induced to enter into the contract by the sign's assurances of video surveillance.[2] It is clear to us that, under the facts of this case, no one could

---

[1] An exculpatory provision "is one where a party seeks to absolve himself in advance of the consequences of his own negligence." *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 148, 207 S.W.3d 525, 530 (2005). Exculpatory provisions are not favored by the law due to the strong public policy of encouraging the exercise of care. *See Jordan, supra.* However, exculpatory provisions are not invalid per se. *See id.; Ingersoll-Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 283 S.W.3d 191 (2008). While Mr. Nash argues that estoppel in pais applies in determining appellee's legal duty to Mr. Nash, he does not assert that the estoppel argument applies to the application of the contract provision.

[2] Nash also contends that the parol-evidence rule did not apply because he alleged fraud in the inducement of the contract. The circuit court, however, did not apply the parol-evidence rule, because it considered his testimony about his discussions with Landmark's agent.

reasonably infer that Landmark had any liability to Nash for losses resulting from theft under either a contract or tort theory. Therefore, summary judgment for Landmark was appropriate.

Affirmed.

GLADWIN and GRIFFEN, JJ., agree.