Stanley **HEINEMAN**, Plaintiff
Below, Appellant,

v.

**DATAPOINT CORPORATION**, Asher B.
Edelman, Edward P. Gistaro, Doris D.
Bencsik, Raymond French, Daniel R.
Kail, Clark P. Mandigo, Charles P. Ste-
venson, Jr., and Dwight D. Sutherland,
Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: June 16, 1992.
Decided: Aug. 5, 1992.

 ██

Norman M. Monhait (argued), Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington (Ernest T. Kaufmann, Kaufman, Malchman, Kaufmann & Kirby, Los Angeles, Cal., of counsel), for appellant.

Rodman Ward, Jr., Randolph K. Herndon (argued), and Matthew F. Boyer, Skadden, Arps, Slate, Meagher & Flom, Wilmington, for individual defendants.

Clark W. Furlow, Smith, Katzenstein & Furlow, Wilmington, for Datapoint Corp.

Before HORSEY, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from the Court of Chancery's dismissal of a stockholder's derivative suit alleging corporate waste and breach of fiduciary duty. The court dismissed the plaintiff's amended complaint for failure to allege with particularity facts sufficient to excuse demand that the corporation's board of directors prosecute this action. The court also denied the stockholder permission to amend his complaint a second time. We reverse the Court of Chancery's dismissal of the amended complaint and remand for further proceedings, to include the opportunity to further amend the complaint.

I

The corporate defendant, Datapoint Corporation ("Datapoint"), is a Delaware corporation engaged in the design and manufacture of computer, computer software and related office communications equipment. Its stock is publicly held by approximately five thousand investors and is traded on the New York Stock Exchange. The individual defendants are the eight directors comprising Datapoint's board during the period of time relevant to the events underlying this case. This suit was initiated by a Datapoint shareholder, Stanley Heineman ("Heineman"). Heineman alleged[1] that four separate transactions, each approved by Datapoint's board, constituted corporate waste and self-dealing by the directors and that Datapoint was entitled to rescission of the transactions, as well as an accounting and damages.

The claims of director misconduct are directed against what Heineman calls "the Edelman Group," named after its alleged leader, Asher B. Edelman ("Edelman"). In 1985 Edelman, currently Chairman of the Board of Datapoint and its largest shareholder,[2] led an insurgent group of shareholders in a proxy contest for control of Datapoint. Pursuant to a settlement of litigation related to that contest, Edelman and four other individuals were named to Datapoint's board.[3] These directors, with Edelman, make up the so-called "Edelman Group" and constitute a majority of the board.

Heineman contends in his complaint that these directors, as well as two other Datapoint directors,[4] were controlled by Edelman and that Edelman used this control to cause Datapoint to enter into certain transactions which were beneficial to Edelman at the expense of Datapoint. He also contends that the individual defendants, constituting Datapoint's board, caused Datapoint to enter into certain other transactions with business entities in which various directors

---

1. The original complaint in this case was filed in February, 1987 and was promptly responded to by an answer and a motion to dismiss. For the next three years, however, the case lay dormant until the defendants filed their Opening Brief in support of their motion to dismiss. The plaintiff filed his Answering Brief soon thereafter, along with a proposed Amended Complaint. In its opinion dismissing the case, the court reviewed the allegations made in the *Amended* Complaint.

2. Edelman allegedly owns roughly 15 percent of Datapoint's outstanding common stock.

3. These individuals are defendants Raymond French, Daniel Kail, Charles Stevenson, and Dwight Sutherland.

4. Defendants Clark R. Mandigo and Edward P. Gistaro.

held interests and that these transactions benefitted those entities (and therefore, indirectly, the directors) at the expense of Datapoint. This control by Edelman and the self-interest of a majority of the directors, Heineman claims, made it unlikely that the board would pursue the claims, thus rendering demand futile.

The Court of Chancery rejected Heineman's demand futility argument and dismissed the action. It ruled that the amended complaint failed to allege particularized facts sufficient to raise a reasonable doubt of director disinterest or independence. The court also denied Heineman permission to amend his complaint a second time, ruling that to do so would disserve one of the purposes underlying the demand requirement of Chancery Court Rule 23.1,[5]—the swift disposal of meritless litigation.

## II

In this appeal, Heineman argues that the Court of Chancery abused its discretion in concluding that allegations of the amended complaint did not raise a reasonable doubt that a majority of Datapoint's directors were disinterested in approving four separate corporate transactions. In the interest of clarity and because the configuration of alleged director interest varies, we will address each transaction. Preliminarily, we note that the parties do not dispute the legal standards which govern the demand requirement but part company on the question of whether the Court of Chancery properly applied those standards. Thus, it is not amiss to review the relevant law concerning presuit demand before addressing the specific allegations of the amended complaint.

■ As we have previously stated, "[a] shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the

corporation." *Levine v. Smith*, Del.Supr., 591 A.2d 194, 200 (1991). In the usual case, a shareholder's remedy for a perceived wrong against the corporation is limited to a demand upon the board that the corporation pursue redress. The board, in the exercise of its statutorily conferred managerial powers, *see* 8 *Del.C.* § 141(a), then makes the ultimate decision of whether or not to prosecute the claim. *Spiegel v. Buntrock*, Del.Supr., 571 A.2d 767, 772–73 (1990); *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779, 782 (1981).

Equity will not require a useless act, however. Where demand upon the board would be "futile," the demand requirement will be excused. *See Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984). In this context, futility does not mean that there is no likelihood that a board will agree to the demand. Rather, demand is futile where a reasonable doubt exists that the board has the ability to exercise its managerial power, in relation to the decision to prosecute, within the strictures of its fiduciary obligations. *Levine*, 591 A.2d at 200. If a board's disability as to a particular transaction is attributable to self-interest or lack of independence, then presuit demand is not required. The standard for pleading such futility as set forth in *Aronson* is "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814. Furthermore, this determination "involves essentially a discretionary ruling on a predominantly factual issue." *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 186 (1988). We therefore review such rulings only for abuse of that discretion. *Id.*

## III

Heineman's amended complaint refers to four separate transactions allegedly en-

5. That rule provides:

In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly

be asserted by it, the complaint shall allege ... with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

tered into by Datapoint with the approval of the defendant directors and which are claimed to be improper. We address them separately.

### A. *The Reimbursement Transaction*

The first such transaction involved payments from Datapoint to a number of directors as reimbursement of expenses related to the successful attempt to acquire control of Datapoint in the proxy contest led by Edelman. Paragraphs 12 and 18 of the amended complaint specifically allege:

12. In the months following his assumption of control of Datapoint, Edelman caused the company to pay to himself and the other members of the Edelman Group more than $1,150,000 as reimbursement for costs associated with Edelman's assumption of control over Datapoint. Said payments were received by and/or for the benefit of Edelman and the Edelman group, who constituted a majority of the board of directors.

\* \* \* \* \* \*

18. In May 1986, Edelman abandoned a plan announced in late 1985 to take Datapoint private in a leveraged buy-out transaction. Edelman and the Edelman group caused Datapoint to agree to pay their expenses in connection with the proposal in the amount of $72,000, notwithstanding the fact that the proposed transaction conferred no benefit on Datapoint.

The "assumption of control" language above refers to Edelman's successful proxy contest for control of Datapoint in 1985.

The Vice Chancellor did not address this claim specifically but in summary fashion ruled:

From a review of the entire complaint, it is clear that plaintiff has not alleged facts which, if true, reasonably permit the Court to infer that a majority of directors were not independent or did not exercise their own business judgment. Nor has plaintiff plead facts which, if true, raise a reasonable doubt that the challenged transactions were not the product of a valid exercise of business judgment.

This conclusory treatment does not satisfy the "highly factual nature of the inquiry" in which the Court of Chancery must engage when a demand defense is raised. *Perot,* 539 A.2d at 186. We read the complaint to allege that a majority of the board, after assuming their positions through a successful proxy contest, reimbursed themselves for the costs incurred in that battle by voting funds from the corporate treasury in excess of $1 million. It may be that this reimbursement never occurred or, if so, was justified for some as yet undisclosed reason. No answer has been filed contesting the allegations of the amended complaint, and they must accordingly be viewed as true in this procedural posture, *Id.* In our view the "well pleaded" allegation of paragraphs 18 and 19 of the amended complaint recite sufficient facts of apparent self-dealing to raise a reasonable doubt concerning director-disinterest. The complaint alleges a successful contest for corporate control, with the victors in that contest using their newly acquired positions to cause the corporation to reimburse the costs of waging that contest. Proof of these facts at trial would represent a *prima facia* case of director self-dealing. *Weinberger v. UOP, Inc.,* Del. Supr., 457 A.2d 701, 710 (1983) ("When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain."). While countervailing evidence might incline the fact finder to discredit the allegations, at this juncture the Court is not engaged in a weighing of evidence. The plaintiff need only raise a reasonable doubt that the business judgment rule applies. And though he is not required to plead a *prima facia* case of breach of fiduciary duty in order to avoid the demand requirement, once he does make such allegations he has carried his burden and demand is excused. We conclude, therefore, that the court's dismissal of this claim was an abuse of its discretion.

### B. *The Arbitrage Transaction*

Heineman next alleges that a substantial investment made by Datapoint, at the di-

rection of the individual defendants, in a firm titled Arbitrage Securities Company ("Arbitrage Securities") inured to the financial benefit of a majority of the board of directors. Paragraphs 14, 15 and 16 of the Amended Complaint read as follows:

14. Not content with the cash extracted from Datapoint pursuant to the transactions set forth above, Edelman caused Datapoint in February 1986 to enter into an agreement with Edelman-controlled Arbitrage Securities pursuant to which Datapoint formed an investment partnership with Arbitrage Securities. Under the terms of this arrangement, Datapoint would provide cash, which Arbitrage Securities would invest in its sole discretion. Net profits would be divided 75% to Datapoint and 25% to Arbitrage Securities. Net losses would be allocated 100% to Datapoint. The amount of cash invested in this partnership was determined by the Datapoint board of directors.

15. Pursuant to the foregoing arrangement with Arbitrage Securities, Datapoint, with the approval and/or acquiescence of the defendant directors, made available to Arbitrage Securities more than $20,000,000 for the latter to utilize in risk arbitrage transactions as it deemed appropriate. Under this arrangement, Datapoint's cash was invested by Arbitrage, in conjunction with one or more of its affiliated investment partnerships. Defendants Edelman, Gistara, French, Kail, Mandigo, Stevenson and Sutherland were investors in one or more of said partnerships.

16. Pursuant to the aforesaid arrangement, Edelman has shifted to Datapoint the entire risk of loss, while retaining for himself and his affiliates the ability to employ Datapoint's assets in arbitrage transactions on a completely risk-free basis with enormous and unreasonable profits for himself and his affiliates.

■ Again, there is no specific treatment of this claim by the Court of Chancery other than the stated conclusion that Heineman has failed to allege sufficient facts to support a finding of reasonable doubt of director disinterest. We disagree.

Apart from the hyperbole, the factual assertions allege an "arrangement" by a majority of Datapoint's board to divert a substantial amount of the corporation's assets to an arbitrage pool whose participants include entities in which a majority of the directors hold an interest. That Datapoint entered into this arrangement with the approval of its board and the specifics of the agreement are assertions of fact. That particular members of Datapoint's board have interests in partnerships which have risk-free access to Datapoint's contribution to the arbitrage panel is also a statement of fact.

These allegations paint a picture of directors funneling corporate assets to their private use, a practice at clear variance with the directors' fiduciary obligation. *Mills Aquisition Co. v. Macmillan, Inc.*, Del.Supr., 559 A.2d 1261 (1989); *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701 (1983); *Sterling v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107 (1952); *Guth v. Loft, Inc.*, Del.Supr., 5 A.2d 503 (1939). The claims of director self-dealing supported by particularized facts raise a reasonable doubt as to director disinterest to the extent that the challenged transaction may result in a benefit to the affected directors "which is not equally shared by the stockholders." *Pogostin v. Rice*, Del. Supr., 480 A.2d 619, 624 (1984). Dismissal of this claim for failure to make demand represents a too stringent application of the standards governing demand and, in our view, constitutes an abuse of discretion.

### C. The United Stockyards Transaction

The amended complaint also alleges that Datapoint, at the direction of the individual defendants, entered into an agreement with the United Stockyards Corporation ("United Stockyards") under which United Stockyards would provide "consulting" to Datapoint for a fee of $300,000 per year. The complaint recites that United Stockyards is a corporation engaged primarily in the business of operating public stockyards

and that it has no expertise in the computer business.

The amended complaint asserts that this transaction was effected by Edelman, for his benefit, through his control and domination of a majority of the Datapoint board. To support this allegation, it is claimed that Edelman is the controlling shareholder of Datapoint and that its directors held their positions "at his pleasure." It is alleged that six members [6] of Datapoint's board occupy board positions in various Edelman-controlled business entities and do so "at the pleasure of Edelman." It is further alleged that those same directors have substantial business dealings with Edelman through investments in numerous Edelman-controlled concerns. Finally, it is alleged that Edelman is the controlling shareholder of United Stockyards and that four members [7] of Datapoint's board also sit on the board of United Stockyards.

The nub of this claim is that a majority of Datapoint's board were dominated by Edelman through his control of their positions as Datapoint directors coupled with his control of business organizations in which they were investors. This domination, it is claimed, has caused Datapoint to enter into a self-dealing transaction. The claim thus attacks the board's independence.

■ An allegation of controlling stock ownership does not raise, *per se,* a reasonable doubt as to the board's independence. *Kaplan v. Centex Corp.,* Del.Ch., 284 A.2d 119, 122 (1971). Nor does a solitary claim of interlocking directorships. *Id.* at 123. To raise such a doubt a party attacking a corporate transaction must advance particularized factual allegations from which the Court of Chancery can reasonably infer that the board members who approved the transaction are acting at the direction of the allegedly dominating individual or entity. *Id.*

■ We recognize that an allegation that directors are dominated and controlled, standing alone, does not meet the demand futility standard. *Aronson v. Lewis,* 473 A.2d at 816. There must be some alleged nexus between the domination and the resulting personal benefit to the controlling party. *Id.* at 815.

In the present case, Heineman has alleged control of various business entities through stock ownership on the part of certain directors affiliated with Edelman. He has also alleged that among those entities there exist extensive interlocking business relationships "at the pleasure of Edelman." Finally, Heineman asserts that transactions between Datapoint and certain of the entities have resulted in substantial payments by Datapoint.

■ We believe these allegations present a close question as to the board's independence. It is at least arguable that Heineman has failed to allege that Edelman *directed* a majority of Datapoint's board to support the transaction and to that extent the factual allegations of the amended complaint may be deemed inadequate. However, in view of our reversal of the Court of Chancery dismissal of the Reimbursement and Arbitrage transactions, further proceedings will be required at the trial level. We therefore deem the better course to be a remand of this claim with direction to permit Heineman to file a second amended complaint to further articulate the assertion of self-interest and lack of independence regarding the United Stockyards transaction.

We emphasize that in permitting a further amendment of this complaint regarding the United Stockyards transaction we are not directly passing upon the Vice Chancellor's denial of Heineman's motion to further amend the entire complaint. In this case the plaintiff had been given two opportunities and three years, *see* note 1, *supra,* to articulate adequate claims and further delay for that purpose would have been prejudicial to the defendants. *Cf. Atlantis Plastics Corp. v. Sammons,* Del. Ch., 558 A.2d 1062 (1989); *see also Bowl-Mor Co. v. Brunswick Corp.,* Del.Ch., 297

---

**6.** Defendants French, Kail, Stevenson, Sutherland, Mandigo and Gistaro.

**7.** Defendants French, Stevenson, Sutherland, Mandigo.

A.2d 61 (1972), *appeal dismissed,* Del. Supr., 297 A.2d 67 (1972). The context has changed however with our reversal of the dismissal of the first two claims. The defendants are still "in court" and subject to the possibility of further proceedings on the merits, including discovery. Thus, delay is no longer an overriding consideration because the defendants will experience no prejudice by the allowance of an amendment. *Boileu v. Bethlehem Steel Corp.,* 3rd Cir., 730 F.2d 929 (1984). Moreover, if United Stockyards claims were to be dismissed with prejudice and upon remand Heineman were to discover additional facts of self-dealing relating to this transaction, he would be barred from asserting those claims against the defendants even though he was then prosecuting other claims of self-interest. Such a result would be inefficient and inequitable. We therefore vacate the dismissal of this claim and remand with directions to allow Heineman a second amendment.

### D. *The Jetstar Transaction*

Finally, the amended complaint contains allegations that Edelman, through his control of the board of Datapoint, caused Datapoint to enter into an agreement with AAA Jetstar, a corporation whose sole shareholder is Edelman. The agreement allegedly contemplates Datapoint's paying AAA Jetstar $245,000 in exchange for "transportation services." It is alleged that this transaction is simply another device whereby Edelman siphons cash from Datapoint for his personal benefit.

Because Heineman has not alleged that a majority of the board holds an interest in AAA Jetstar, he again relies on the allegation of board domination to show that the decision to enter into Jetstar transaction is not entitled to the protection of the business judgment rule. *Aronson,* 473 A.2d at 814. Again, the claim of lack of independence is arguably insufficient but since it is part of a larger dispute which must receive further judicial attention at the trial level we decline to affirm its dismissal in the present posture of this litigation. This claim also will be remanded for the opportunity to enlarge upon the allegation of domination through the filing of a second amended complaint.

The amended complaint pleads in sufficient particularized detail claims of interlocking directorships, domination by Edelman and shared investments between Edelman and a majority of the Datapoint board to raise a reasonable doubt concerning the disinterest and independence of the Datapoint board. The level of doubt is clearly sufficient as to the reimbursement and arbitrage claims as to excuse presuit demand as futile. The Court of Chancery's holding to the contrary represents an abuse of discretion. The remaining claims involving United Stockyards and Jetstar should be subject to amended pleading in the context of ongoing litigation as to related claims.

REVERSED AND REMANDED.