2011 Ark. App. 242

**Billy K. BERRY, derivatively on behalf of DILLARD'S, INC., Appellant**

v.

**William DILLARD, II, James I. Freeman, Alex Dillard, Mike Dillard, Drue Matheny, James A. Haslam, III, Peter R. Johnson, Robert C. Connor, R. Brad Martin, Frank R. Mori, Warren A. Stephens, and Nick White and Dillard's, Inc., nominal defendant, Appellees.**

No. CA 10–620.

Court of Appeals of Arkansas.

March 30, 2011.

Alex G. Streett, James A. Streett, Russellville, James G. Stranch, III, Joe P. Leniski, Jr., J. Gerard Stranch, Nashville, TN, for appellant.

James M. Simpson, David Duane Wilson, Little Rock, Joseph McLaughlin, New York, NY, for appellees.

DOUG MARTIN, Judge.

Billy Berry brings this appeal from the order dismissing his shareholder-derivative action against various officers and di-

rectors of Dillard's, Inc.[1] In dismissing the action, the Pulaski County Circuit Court found that the complaint was defective because it failed to properly allege that Berry made a presuit demand of Dillard's board of directors or that such a demand was futile, requirements imposed both by statute and the rules of civil procedure. For reversal, Berry asserts that he pled sufficient facts such that the demand requirement should be excused as futile. We affirm.

Berry is a shareholder of Dillard's, Inc. He brings his claim on behalf of Dillard's alleging breach of fiduciary duties of loyalty and good faith against all defendants and unjust enrichment against the four members of the Dillard family and Stephens. On June 10, 2009, Berry filed his verified complaint in Pulaski County Circuit Court. In the complaint, Berry maintains that the compensation paid to the members of the Dillard family was exorbitant in view of the company's financial condition. In awarding themselves such exorbitant compensation at the expense of the company and its shareholders, Berry asserted that the Dillard family board members had breached their fiduciary duties of loyalty and good faith. Stephens, Johnson, and Connor, members of the board's compensation committee, were alleged to have breached their fiduciary duties to the company and its shareholders by approving the family members' compensation. The complaint further alleges that Freeman, Haslam, Martin, Mori, and White, the remaining members of the board, breached their fiduciary duties by knowingly allowing the exorbitant compensation to continue and by failing to provide oversight as required by their positions.

Additionally, Berry contended that this compensation unjustly enriched the Dillard family board members.

The complaint further alleges that the Dillard family board members rewarded Stephens for approving their excessive compensation by making excessive and improper payments to Stephens's corporation, Stephens, Inc. Such excessive and improper payments were allegedly funneled to Stephens, Inc., as payment for Stephens, Inc.'s assistance to Dillard's, Inc., in evaluating Dillard's options regarding its partial ownership of CDI, Inc., a general contractor. Berry asserted that the decision to retain Stephens, Inc., was made without any input or approval from the board and that the non-Dillard family members of the board failed to evaluate the agreement. The decision to retain Stephens, Inc., was presented by Berry as evidence that the board members violated their fiduciary duties. Berry further applied this allegation to support his unjust enrichment claim against Stephens.

In the complaint, Berry pled presuit demand futility, alleging that a presuit demand would be futile because the "Board could not independently or disinterestedly consider whether to bring the allegations alleged...." Berry identified reasons specific to each defendant as to why a presuit demand would be futile. Among such alleged reasons were familial ties, business ties, professional ties, direct oversight of the corporate misconduct, direct participation in the corporate misconduct, failure to remedy the corporate misconduct, authorization or acquiescence in the corporate misconduct, employment with Dillard's, the likelihood of liability,

1. These officers and directors are appellees William Dillard, II, James I. Freeman, Alex Dillard, Mike Dillard, Drue Matheny, James A. Haslam, III, Peter R. Johnson, Robert C. Connor, R. Brad Martin, Frank R. Mori, Warren A. Stephens, and Nick White. William Dillard, II, Alex Dillard, Mike Dillard, and Drue Matheny are siblings. Freeman and the Dillard family members are also executives of the company.

the possible lack of insurance coverage, the possible resulting civil actions, and the domination and control of the Dillard family over the other board members.

The directors responded to the complaint with a motion to dismiss. Two grounds were asserted for dismissal: (1) the failure to plead particularized facts demonstrating that demand would have been futile, and (2) the failure to state a claim against the directors because the |₄Restated Certificate of Incorporation eliminates the personal liability of directors to the company for the claims asserted in the complaint.[2]

In response, Berry asserted that there was reason to doubt that the Dillard family board members, Warren Stephens, or James Freeman could be independent or disinterested and, therefore, demand was futile as to those directors. Berry also asserted that the demand requirement was excused as to the claims of corporate waste and unjust enrichment.[3] Finally, Berry argued that the complaint stated proper claims under Ark. R. Civ. P. 12(b)(6).

### The Circuit Court's Ruling

The circuit court held a hearing on the motion to dismiss on February 5, 2010. At the conclusion of the hearing, the court ruled from the bench and granted the directors' motion to dismiss. The court found that the complaint failed to allege sufficient facts creating a reasonable doubt that the eight members of the board who were not members of the Dillard family could exercise disinterested and independent judgment in considering a demand to bring the claims sought to be alleged in the complaint. The court's written order was entered February 19, 2010. This appeal followed.

### |₅Standard of Review

We review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. *Branscumb v. Freeman*, 360 Ark. 171, 200 S.W.3d 411 (2004). In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in the plaintiff's favor. *Id.* Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*

### Discussion

Although Berry argues seven points for reversal in his brief, we need not address all seven. The circuit court and the parties proceeded below as if the four members of the Dillard family were interested so that they could not objectively consider a demand made to them. The directors do not seriously argue otherwise. Moreover, Berry has abandoned his argument that outside directors James A. Haslam, III, Peter R. Johnson, Robert C. Connor, R. Brad Martin, Frank R. Mori, and Nick White are not unbiased and disinterested. We will, therefore, consider only the points

---

2. The directors also filed a motion seeking to stay discovery until their motion to dismiss was disposed of because, as they argued in their brief supporting the motion, Berry was not entitled to discovery in order to demonstrate futility. There is no issue concerning the stay of discovery raised in this appeal.

3. Although Berry raised these claims in his complaint, he does not pursue the claims on appeal. To the extent he alleges that presuit demand was excused as to these claims, Berry fails to provide any argument or citation to authority. Because the validity of his assertion is not apparent without further research, we decline to address the issue. *See, e.g., Koch v. Adams*, 2010 Ark. 131, 361 S.W.3d 817.

relating to directors Warren Stephens and James Freeman, and the argument that Berry should be allowed to amend his complaint.

Dillard's is incorporated under Delaware law and headquartered in Little Rock, Arkansas. In *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), the United States Supreme Court explained that, in a shareholder-derivative suit, any demand requirement or exception thereto is deemed a matter of substantive law; thus, we apply Delaware law to resolve the substantive issues.

■ [6]Generally, the management of the business and affairs of a Delaware corporation is entrusted to its directors, who are the duly elected and authorized representatives of the shareholders. Under normal circumstances, the business-judgment rule mandates deference to directors' decisions, presuming that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and with the honest belief that the action taken was in the best interests of the company. *Aronson v. Lewis,* 473 A.2d 805 (Del.1984), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000).

■ A derivative action is a procedural device that permits shareholders to assert a claim belonging to the corporation and on the corporation's behalf. *Aronson,* 473 A.2d at 811. Because such a suit impinges on the authority of a company's board of directors over matters of corporate governance, including whether to litigate a claim on behalf of the corporation, Delaware, like most jurisdictions, requires that shareholders make a demand on the board to take action prior to filing suit. *Rales v. Blasband,* 634 A.2d 927, 932 (Del. 1993); *Aronson,* 473 A.2d at 811–12. It is well settled that, to prosecute a derivative suit, shareholders must demonstrate either that a demand was made on the board and it was wrongfully refused or that demand should be excused because the directors are incapable of making an impartial decision regarding such litigation. *Rales,* 634 A.2d at 932.

The demand requirement serves three beneficial purposes. First, it requires the exhaustion of intracorporate remedies and provides an alternative-dispute-resolution process that may prevent the litigation altogether. *Grimes v. Donald,* 673 A.2d 1207, 1216–17 (Del.1996), *overruled on other grounds by Brehm,* 746 A.2d at 254. Second, if the derivative suit has [7]merit, the presuit demand on the board allows the directors to control the proceedings. *Id.* Third, if the board wrongfully refuses to initiate the action, the shareholder can then control the proceedings. *Id.* These alternative conditions precedent to the right to initiate derivative litigation under Delaware law provide a mechanism designed to deter frivolous and costly suits based solely on suspicion or conclusory allegations, while simultaneously affording shareholders who can allege sufficient particularized facts access to the courthouse. *Aronson,* 473 A.2d at 809–10.

■ The present case implicates the futility exception to the requirement of presuit demand on the board. The Delaware Supreme Court has set forth two different standards to apply to the various decisions or non-decisions a board may make. For conscious board decisions, whether to act or not, the two-pronged *Aronson* test applies. The first prong of the futility rubric is "whether, under the particularized facts alleged, a reasonable doubt is created that ... the directors are disinterested and independent." *Aronson,* 473 A.2d at 814; *see also id.* at 816 (holding that "[i]ndependence means that a director's decision is based on the corporate

merits of the subject before the board rather than extraneous considerations or influences"). The second prong is whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson,* 473 A.2d at 814. These prongs are in the disjunctive.[4] Therefore, if either prong is satisfied, presuit demand is excused. A board's failure to act absent a conscious decision to refrain from acting, such as a failure to supervise, is analyzed under *Rales.* The *Rales* court articulated the analysis as follows:

> [A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Id.* at 934. An evenly divided board satisfies the requirement that a majority of the board is unable to consider a demand impartially. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1046 n. 8 (Del.2004) (citing *Beneville v. York,* 769 A.2d 80, 85–86 (Del. Ch.2000)). "Demand futility analysis is conducted on a claim-by-claim basis." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 833 A.2d 961, 977 n. 48 (Del.Ch.2003).

In *Brehm, supra,* the Delaware Supreme Court held that derivative-action pleadings "must comply with *stringent requirements of factual particularity* that differ substantially from the permissive notice pleadings governed solely by Court of Chancery Rule 8(a) [Rule 8(a) ]. Rule 23.1 is not satisfied by conclusory statements or mere notice pleading." *Brehm,* 746 A.2d at 254 (emphasis added). Specifically, the *Brehm* court found that a plaintiff must sufficiently set forth with particularity "ultimate" or "elemental" facts. *Id.* Thereafter, the plaintiff would be entitled to "all reasonable inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Id.* at 255.

The Delaware Supreme Court has thus observed that the basis for claiming that demand is excused normally would be that "(1) a majority of the board has a material financial or familial interest; (2) a majority of the board is incapable of acting independently for some other reason such as domination or control; or (3) the underlying transaction is not the product of a valid exercise of business judgment." *Grimes,* 673 A.2d at 1216.

Presuit demand is excused by the Delaware courts when a derivative plaintiff establishes a reason to doubt the disinterestedness and independence of a majority of the board. *Rales,* 634 A.2d at 934; *Aronson,* 473 A.2d at 814. Thus, for his complaint to withstand a motion to dismiss, Berry must show that a majority of the board is both interested in the challenged transactions and lacking independence. He has failed to meet this test. He also appears to have conflated the two issues, which the Delaware Court of Chancery has noted are sometimes confused. *See Orman v. Cullman,* 794 A.2d 5, 25 n. 50 (Del.Ch.2002).

---

4. The actual text in *Aronson* uses the word "and," but the test clearly was not intended to be conjunctive, as the analysis adopted in the opinion demonstrates. Subsequent decisions have made it clear that the test is disjunctive. *See Brehm,* 746 A.2d at 256; *Rales,* 634 A.2d at 933.

We analyze the allegations against directors James Freeman and Warren Stephens in turn. The complaint contains no allegations that Freeman is interested in either the compensation paid to the members of the Dillard family or the transactions between Dillard's, Inc., and Stephens, Inc. In fact, Berry abandons his contention that Freeman is interested, focusing instead on the argument that Freeman is not independent by virtue of his employment as chief financial officer of the corporation. The Delaware courts have held that the continued employment and compensation of one serving as both a director and a corporate officer can raise a reasonable doubt as to the director's independence for purposes of acting upon a demand. *Rales,* 634 A.2d at 937; *see also Beam,* 833 A.2d at 977–78. Contrary to the directors' arguments, Berry has, in fact, raised a reasonable doubt as to Freeman's independence by alleging that Freeman's employment as an officer and director of the company was his principal employment and, therefore, material to Freeman. Such fact, however, does not mandate reversal of the circuit court's dismissal of Berry's complaint because Berry has not shown that a majority of the board is both interested and lacking independence.

Director Warren Stephens presents a different analysis. First, Stephens stands on both sides of the transactions between Dillard's, Inc., and Stephens, Inc. The *Aronson* court defined interest as "meaning that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." 473 A.2d at 812; *see also Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 362 (1993). Self-interest alone, however, is not a disqualifying factor, even for a director. *Cede & Co.,* 634 A.2d at 363. There must be evidence of disloyalty such as the motives of entrenchment, fraud upon the corporation or the board, abdication of directorial duty, or the sale of one's vote. *Id.* No such allegations are made in Berry's complaint.

Also absent from the complaint are any allegations that Stephens is not independent of the members of the Dillard family. The Delaware Supreme Court has held that the mere allegation that directors are dominated and controlled does not raise, per se, a reasonable doubt as to the board's independence and thus will not suffice to meet the demand-futility standard. *Heineman v. Datapoint Corp.,* 611 A.2d 950, 955 (Del.1992). Rather, the plaintiff "must advance particularized factual allegations from which the Court of Chancery can infer that the board members who approved the transaction are acting at the direction of the allegedly dominating individual or entity." *Id.; see also Orman,* 794 A.2d at 25 n. 50 (defining the factors that would potentially make a director not independent). A plaintiff seeking to advance such contentions must establish that there exists "a nexus between the domination and the resulting personal benefit to the controlling party." *Heineman,* 611 A.2d at 955. The complaint contains no allegations that the Dillard family board members orchestrated or directed that a majority of the board support the transactions. In addition, there are no allegations that Stephens, a member of the board's compensation committee, controlled or directed the other two members of the committee so that Stephens directed said members in approving the allegedly excessive compensation of the members of the Dillard family. As a result, the factual allegations of Berry's complaint are deficient. *Heineman,* 611 A.2d at 955.

While there are allegations in the complaint of quid pro quo transactions between Dillard's and the Stephens entities, there are no factual allegations showing that the transactions were in any way tied to each other or to the compensation paid to the members of the Dillard family, or that the Dillard family board members orchestrated the decision to enter into the transactions with the Stephens entities. The complaint also contains no allegations that the transactions between Dillard's and the Stephens entities were not in the best interest of Dillard's, Inc., or its shareholders. Nor are there any allegations that the Stephens entities did not competently perform the services rendered or that they were paid excessive fees for such services.

Because Berry's allegations are conclusory, the complaint fails to properly plead a basis showing that the demand would be futile. As such, the circuit court properly dismissed Berry's complaint.

We must address Berry's alternative argument that he should be allowed to amend his complaint to properly allege demand futility. Such matter is governed by Arkansas procedural law. Berry is correct that, when a complaint is dismissed for failure to state facts upon which relief can be granted, the dismissal should be without prejudice. *Sluder v. Steak & Ale of Little Rock, Inc.,* 368 Ark. 293, 245 S.W.3d 115 (2006). Such rule has no application under the circumstances of this case, however. Upon the dismissal of the complaint, a plaintiff has the election to either plead further or appeal. *Id.* If an appeal is taken, the option to plead further is waived in the event of an affirmance. *Id.* The reasoning behind this exception is that, once the case is dismissed for failure to state sufficient facts and is then affirmed on appeal, nothing remains to be amended. Here, Berry chose to appeal and thus waived his right to amend his complaint.

Delaware law is in accord. In *White v. Panic,* 783 A.2d 543 (2001), the Delaware high court noted that shareholder "[p]laintiffs may well have the 'tools at hand' to develop the necessary facts for pleading purposes," including the inspection of the corporation's books and records under Del. Code Ann. tit. 8, § 220 (Supp.2010); 783 A.2d at 549 n. 15. The *White* court also discussed the rationale behind the rule that a dismissal for failure or inability to properly plead the basis for demand futility is normally with prejudice:

> The policy against permitting stockholder plaintiffs to amend their complaints after an unsuccessful appeal encourages the plaintiff to investigate their claims before filing a complaint so that they have a basis at the outset to make particularized factual allegations in the complaint. In contrast, if plaintiffs were granted leave to amend after an unsuccessful appeal, plaintiffs would have a reduced incentive to ensure that their original complaints are complete from the start.

783 A.2d at 555–56.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.