Cite as 2022 Ark. App. 287

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-290

| | | |
|---|---|---|
| WESLEY YORK | | **Opinion Delivered** June 1, 2022 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION |
| V. | | [NO. 60CV-20-3660] |
| GALR, LLC, D/B/A THE SUMMIT AT VELVET RIDGE; ARNOLD GROUNDS APARTMENT MANAGEMENT & AFFORDABLE HOUSING SPECIALISTS, LLC | | HONORABLE PATRICIA JAMES, JUDGE |
| | APPELLEES | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

In this appeal, we are presented with the issue of what duty, if any, an apartment complex and its management company owe to a delivery driver to protect him from the criminal acts of third persons that occur in the parking lot of the premises. We hold, in this instance, that neither the apartment complex nor the management company assumed a duty, either contractually or by their actions, to protect the delivery driver. Accordingly, we affirm.

In December 2019, appellant Wesley York was delivering pizza to an apartment complex in North Little Rock when he was attacked by three men. He lost an eye in the attack. He later filed suit against the three men who allegedly perpetrated the attack,[1] the

---

[1]York dismissed his claims with prejudice against his alleged attackers, creating a final order for our review.

apartment complex to which he was delivering the pizza, and the apartment complex's management company. As to the apartment complex and its management company, York sought damages for negligence, tort of outrage, and as a crime victim pursuant to Arkansas Code Annotated section 16-118-107 (Repl. 2016).

The Pulaski County Circuit Court subsequently dismissed York's amended complaint against the apartment complex and its management company, finding that the complaint failed to state facts upon which relief could be granted. More specifically, the circuit court held that neither the apartment complex nor its management company had any contractual or implied duty toward York, that York was not an invitee on the premises, and that he had failed to plead any facts regarding the apartment complex or its management company participating in any felonious conduct. York now appeals, challenging only the dismissal of the negligence claims against the apartment complex and its management company. He argues on appeal that the circuit court erred in finding that the apartment complex and its management company did not owe him a duty and that he was not an invitee on the premises.[2]

I. *Standard of Review*

---

[2]When a complaint is dismissed under Arkansas Rule of Civil Procedure 12(b)(6) for failure to state facts upon which relief can be granted, the dismissal is without prejudice. *Sluder v. Steak & Ale of Little Rock, Inc.*, 368 Ark. 293, 298, 245 S.W.3d 115, 118 (2006). The plaintiff then has the election to either plead further or appeal. *Id.* If the plaintiff chooses to appeal, he or she waives the right to plead further in the event of an affirmance by the appellate court, *Berry ex rel. Dillard's, Inc. v. Dillard*, 2011 Ark. App. 242, at 12, 382 S.W.3d 812, 820, and the complaint will be dismissed with prejudice. *Id.*

In reviewing a circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff. *Parnell v. FanDuel, Inc.*, 2019 Ark. 412, 591 S.W.3d 315. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* at 3, 591 S.W.3d at 318. We look only to the allegations in the complaint and not to matters outside the complaint. *Henson v. Cradduck*, 2020 Ark. 24, 593 S.W.3d 10. We treat only the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Id.* The standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *Id.* We consider questions of law de novo. *Brown v. Towell*, 2021 Ark. 60, 619 S.W.3d 17. With this standard in mind, we will review the following facts as alleged by York in his amended complaint and presume them to be true.

## II. *The Amended Complaint*

GALR, LLC (GALR), owns and operates an apartment complex in North Little Rock known as the Summit at Velvet Ridge (the Summit). The Summit is a multifamily low-income housing project subject to the regulations of the U.S. Department of Housing and Urban Development (HUD). Among other requirements, HUD requires that public housing units be "decent, safe, sanitary, and in good repair." GALR also has a HUD Housing Assistance Program (HAP) contract involving the Summit. To fulfill its contractual duty, GALR agreed to provide appropriate management, operation, and maintenance services.

Concerning safety, GALR contractually agreed to keep the premises safe and to provide reasonable security from criminal activity in the common areas of the premises (including the cost of security personnel). However, GALR took little to no action to fulfill this duty.

GALR has an extensive history of HUD noncompliance and violations, specifically for failures to provide reasonable security from criminal activity on the premises. In 2017, HUD performed an onsite review of the Summit. HUD issued the Summit an overall unsatisfactory rating. Specifically, HUD found that the Summit had not provided a written security plan and was not sufficiently monitoring or addressing criminal activity, resulting in an increased risk of additional, more serious crimes.

As a result of this onsite review, HUD issued certain directives to the Summit. First, it determined that the Summit must reassess how it addressed crime, both proactively and reactively. HUD, therefore, directed the Summit to perform an assessment of the number and types of criminal activity that were occurring at the property as well as the effectiveness of the safety measures currently in place. Second, HUD directed the Summit to implement a corrective action plan to improve the safety at the property and decrease the amount of criminal activity that is occurring onsite. The corrective action plan was to include specific measures regarding how criminal activity would be prevented, monitored, and addressed as well as the frequency of any proposed actions, with the roles and/or partnerships of key participants—owner/agent, residents, community groups, and the North Little Rock Police Department—specified. The corrective action plan could also include a plan for regularly obtaining and reviewing police reports with the apartment complex, taking appropriate lease-

enforcement action based on resident- or unit-specific information in police reports; periodic resident meetings to encourage safety and neighborhood-watch-like activities; regularly scheduled dialogue and meetings between management, residents, and the local police; and/or the procurement of a paid patrol service.

Arnold Grounds Apartment Management and Affordable Housing Specialists, LLC (AGAM), is a management company specializing in the management of low-income and affordable housing. In March 2018, GALR contracted with AGAM for the management of the Summit. GALR and AGAM took actions[3] and assumed a duty to implement and enforce an effective safety plan at the Summit to improve safety at the property and decrease the amount of significant criminal activity occurring on site.

In October 2019, AGAM obtained a security proposal for the Summit from Total Security Concepts, LLC, d/b/a Signal 88 Security of Little Rock (Total Security). The proposal included monitoring for a variety of site-specific property violations, such as trespassing, vandalism, criminal activity, and all other client concerns. GALR agreed to and signed the agreement.

On December 14, 2019, York was delivering a pizza to the Summit apartments. While in the parking lot of the apartment complex, York was robbed at gunpoint by a group of masked or partially masked assailants. The parking lot of the apartment complex is a common area possessed and controlled solely by GALR. No other entity or individual,

---

[3]Which actions were taken was not specified in the amended complaint.

5

including tenants of the Summit apartments, are authorized to exercise any control over the parking lot where York was attacked. GALR and AGAM knew that York and other food-delivery drivers were on the premises.

GALR and AGAM were fully aware that criminal activity, including violent criminal activity, was occurring at the apartment complex. Between January 1, 2014, and December 14, 2019, the North Little Rock Police Department was called to the Summit apartment complex approximately 4700 times. GALR and AGAM or their agents personally called the police to report criminal activity on the premises more than fifty times in the five years preceding the attack on York.

III. *Analysis*

Assuming the foregoing facts are true, the issue becomes whether GALR and AGAM owe a duty, either contractually or by assumption, to York to prevent the criminal attack by third persons. The issue of whether a duty exists—and what duty exists—is a question of law. *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439.

A. Contractual Duty

The first issue to be decided is whether GALR or AGAM had a contractual duty to protect York from the criminal acts of a third party. York contends that GALR and AGAM had a contractual duty to protect him as a result of their agreement to be bound by HUD regulations and in the overall HAP contract.

In his amended complaint, York alleged that GALR contractually agreed with HUD to provide decent, safe, and sanitary housing in its maintenance and operation of the

6

Summit. As part of its agreement to accept HUD funding, he asserted that GALR contractually agreed to keep the premises safe and to provide reasonable security from criminal activity in the common areas of the premises but took little to no actions to fulfill this duty.

Even assuming his allegations are true, his argument fails. He argues that the HAP contract between HUD and GALR creates a duty. However, York failed to attach the contract to his amended complaint and failed to specifically identify what provisions, if any, contractually obligate GALR and AGAM to protect third parties from criminal attacks. Accordingly, York has failed to state any facts to indicate how the HAP contract extends a duty to protect third parties or that GALR and HUD intended the general public to be third-party beneficiaries to those contracts.[4]

While he argues that HUD regulations create a contractual duty, we disagree. First, we note that 24 CFR § 5.703, cited by York in his amended complaint, does not even pertain to safety in the sense of protection from criminal activity; instead, it deals exclusively with the physical condition of the premises. Second, under HUD regulations, GALR and AGAM are required to provide safe and secure housing only *to its tenants*.

---

[4]In Arkansas, the presumption is that parties contract only for themselves; thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. *Bigge Crane & Rigging Co. v. Entergy Ark., Inc.*, 2015 Ark. 58, 457 S.W.3d 265. A third party may not recover on a contract under which the parties did not intend to benefit the third party, one under which the third party is a mere incidental beneficiary. *Id.*; *Cook v. U.S. Fid. & Guar. Co.*, 216 Ark. 743, 745, 227 S.W.2d 135, 136 (1950).

We also reject York's argument that the 2017 HUD review creates a contractual duty. In his amended complaint, York indicates that GALR was required by HUD to create a corrective security plan to address deficiencies noted in the review. Again, assuming this is true, GALR agreed with HUD to create a corrective safety plan on the property for the benefit of its tenants; it does not necessarily require GALR to protect its tenants from all criminal activity. If it does not owe such a duty to its tenants, it would not owe such a duty to York—or at least York has failed to allege facts to support such a duty.

## B.  Assumption of Duty

Next, York argues that because GALR and AGAM took general security measures at the apartments by hiring security and contracting with off-duty police officers, it assumed a duty to protect him from criminal attack. In light of precedent from our supreme court, we disagree.

In *Hall v. Rental Management, Inc.*, 323 Ark. 143, 913 S.W.2d 293 (1996), our supreme court held that general security measures taken by a landlord or property owner will not impose a duty to prevent all crime. In *Hall*, Rental Management, Inc., had implemented certain practices out of concern for the safety of its tenants, including such things as lighting, evening patrols, and communicating with residents regarding suspicious activities in an effort to help assure the quiet enjoyment and basic safety of the tenants and to provide a modicum of deterrence to criminal activity. Our supreme court held that  taking these measures did not result in an assumption of a duty to protect and stated that it was reluctant to hold that

8

a landlord's use of these modest, conscientious measures imposed a full-blown duty to protect tenants from third-party criminal activities. *Id.*

Here, York alleged in his amended complaint that GALR and AGAM contracted with a security company and off-duty police officers to provide "security" for the complex. However, the simple fact that GALR and AGAM took actions in an attempt to deter crime does not necessarily imply that they also assumed a duty to prevent all crime. *Hall, supra.* Moreover, York did not allege what this security entailed or that it even covered securing the parking lot in question. Thus, even if GALR and AGAM assumed some duty, it is unclear the extent of the duty owed or that GALR and AGAM breached that duty. *See Lacy v. Flake & Kelley Mgmt., Inc.*, 366 Ark. 365, 235 S.W.3d 894 (2006) (finding landlord may have assumed a duty to monitor entry into the bank building, but finding no assumption of duty when there was nothing in the lease terms that could give rise to a duty to protect tenants from criminal attacks by third parties in the bank's parking lot).

## C. Invitee Status

York next contends that the circuit court erred in finding that he was not an invitee on the property. We have recognized two types of invitees: a public invitee and a business invitee. *See Slavin v. Plumbers & Steamfitters Local 29*, 91 Ark. App. 43, 207 S.W.3d 586 (2005). A public invitee is a person who is invited to enter or remain on the property as a member of the public for a purpose for which the property is held open to the public. *Id.*; *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, 470 S.W.3d 293 (noting an example of a public invitee as a member of the public going to a hospital or library). Business invitees, on the

9

other hand, are those "who enter for a purpose connected with the business of the possessor." Restatement (Second) of Torts § 332 cmt. a. York argues that he could be considered either a public invitee or a business invitee. We disagree.

As for his status as a public invitee, York contends that he was a member of the public (pizza delivery driver) invited onto the premises for a purpose for which GALR and AGAM held out to the public (delivery of food and other items to the property for the benefit of the tenants or GALR and AGAM's agents). Neither GALR, AGAM, or their agents hold themselves out to the public as a restaurant or a food-truck lot. Instead, GALR and AGAM are entities with a purpose of providing multifamily low-income housing; their property simply is not held open for the purpose of food delivery.

As for his claim that he is a business invitee, York submits that GALR and AGAM benefited financially from their tenants being able to have food and other items delivered to their property. He claims that GALR and AGAM would struggle to maintain tenants if the tenants were unable to have things delivered to their apartments. We, however, conclude that this benefit, if any, is merely incidental. *See Park Plaza Mall CMBS, LLC v. Powell*, 2018 Ark. App. 48 (the fact that mall obtained a portion of income as rent was an incidental benefit not converting employee of tenant into a business invitee).

Furthermore, York failed to allege that he was invited onto the property by either AGAM or GALR directly, and he has failed to cite any case law that provides that an invitee of a tenant becomes an invitee of its landlord. Moreover, he also does not allege that any of the tenants of GALR ordered the pizza or that he was actually invited onto the property by

10

anyone associated with the property; the delivery could very well have been set up by the third-party attackers for purposes of the robbery. We find no error with the circuit court's finding that York was not an invitee. Because the court was correct in this finding, we need not determine whether the attack against him was foreseeable.

### D. Licensee Status

Finally, York argues that, at the very least, he was a licensee on the property. In contrast to an invitee, a licensee is one who goes upon the premises of another with the consent of the owner for one's own purposes and not for the mutual benefit of oneself and the owner. *Delt v. Bowers*, 97 Ark. App. 323, 249 S.W.3d 162 (2007). However, York fails to identify any facts alleged in the complaint to support his claim that he was a licensee.

### IV. *Conclusion*

Our supreme court has clearly stated that a tenant is not an invitee of the landlord; *see Wheeler v. Phillips Dev. Corp.*, 329 Ark. 354, 947 S.W.2d 380 (1997); that a landlord has no duty to protect a tenant from criminal acts of third parties, *see Bartley v. Sweetser*, 319 Ark. 117, 890 S.W.2d 250 (1994); and that a landlord does not have a duty to protect an employee of a tenant, *see Lacy*, 366 Ark. 365, 235 S.W.3d 894. Essentially, York has asked us to extend a duty to protect to someone even further removed from a relationship with the landlord—someone on the property possibly at the request of the tenant. We decline to do so.

Affirmed.

GRUBER and HIXSON, JJ., agree.

11

*Green & Gillespie*, by: *Joshua D. Gillespie*; *Denton & Zachary*, by: *Joe Denton* and *Justin Zachary*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Fuqua Campbell, P.A.*, by: *Chris Stevens* and *Phil Campbell*, for separate appellee GALR, LLC, d/b/a The Summit at Velvet Ridge.

*Friday, Eldredge & Clark, LLP*, by: *Donald H. Bacon* and *Kimberly D. Young*, for separate appellee Arnold-Grounds Apartment Management & Affordable Housing Specialists, LLC.